**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0003039
18-MAR-2016
08:02 AM**

NO. CAAP-13-0003039

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
VICENTE KOTEKAPIKA HILARIO, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 11-1-0023)


MEMORANDUM OPINION
(By:  Fujise, Presiding Judge and Leonard, J.,
with and Ginoza, J., dissenting)

I.

Defendant-Appellant Vicente Kotekapika Hilario
(Hilario) appeals from the July 25, 2013 Judgment of Conviction
and Sentence entered by the Circuit Court of the Fifth Circuit
(Circuit Court)[1] convicting him, in Count 1, of Murder in the
First Degree in violation of Hawaii Revised Statutes (HRS) § 707-
701(1)(c) (2014), in Count 3, of Retaliating Against a Witness in
violation of HRS § 710-1072.2 (2014), in Count 4, of Intimidating
a Witness in violation of HRS § 710-1071(1)(a/b/c) (2014) and in
Count 5, of Bribing a Witness in violation of HRS § 710-
1070(1)(a/b/c) (2014).[2]

---

[1]     The Honorable Randal G.B. Valenciano presided.

[2]     Hilario was also charged, in Count 2, of Murder in the Second
Degree in violation of HRS § 707-701.5 (2014), which, in light of its verdict
on Count 1, the jury did not reach.

Hilario presents three points of error on appeal.[3]  He challenges the Circuit Court's denial of his Motion to Dismiss based on Hawai'i Rules of Penal Procedure (HRPP) Rule 48 (Rule 48), admission of the "Safeway robbery" evidence as a violation of his right to a fair trial, and the denial of his Motion for New Trial based on the selection procedure used by the Circuit Court during voir dire of prospective jurors.

## II.

As presented at trial, the State's theory of the case was that Hilario shot Aureo Moore (Moore) because Moore would soon testify as the complaining witness regarding a robbery conducted near the "Safeway" (Safeway robbery), of which Hilario's friend, Kyle Akau (Akau), was accused, and to which Hilario was linked.  According to prosecution witnesses, Hilario asked Angienora Crawford (Crawford) several times before she agreed to drive Moore, who in the past had supplied her with illicit drugs, to a deserted area where Hilario could meet with Moore.  On the morning of the shooting, December 17, 2010, Crawford contacted Hilario and told him she was going to help Moore find oxycontin.  Hilario asked Crawford to drop Moore off on Manai Road, overlooking Anahola Beach Park.  Crawford agreed. In the meanwhile, Hilario picked up two friends, Jens Kyler Hansen-Loo (Hansen-Loo) and David Manaku (Manaku), and asked if they wanted to go for a ride.  Upon arrival at Anahola Beach Park, Hilario asked Manaku and Hansen-Loo to wait in the bushes next to an ironwood tree on Manai Road.

Crawford dropped Moore off at the Manai Road lookout mauka of Anahola Beach Park shortly before 11:00 a.m.  Moore gave Crawford one hundred dollars to purchase a number of pills. Crawford then met Hilario at the Anahola soccer fields, where Hilario gave Crawford a number of oxycontin pills, but refused to accept Moore's money.  Hilario told Crawford not to mention

---

[3]     Hilario's Opening Brief fails to conform to Hawai'i Rules of Appellate Procedure (HRAP) Rule 28.  Specifically, the Argument section of his brief contains no citations to the parts of the record relied on.  See HRAP Rule 28(b)(7).  However, as this court has a policy of deciding cases on the merits where possible, we will consider Hilario's arguments to the extent we are able.  See Bettencourt v. Bettencourt, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995).

seeing him that day, and requested she drive in the opposite direction from where she had come and away from where she dropped Moore off. Hilario then ran to meet Manaku and Hansen-Loo in the bushes, just makai of where Moore was waiting under an ironwood tree.

Upon arriving at Anahola Beach Park, Hilario headed in Moore's direction, firing a gun four times, after which Moore fell to the ground. Hilario then walked over to Moore and shot him in the head twice at close range. Hilario, Manaku, and Hansen-Loo then ran south along Manai Road in the direction of Kukuihale Road, when they heard sirens.

Manaku was discovered at 12:20 p.m. sitting down near a creek, sweating and breathing heavily. Hilario was arrested shortly thereafter on Manai Road, near the crime scene.

Moore died at Wilcox Hospital at approximately 3:00 p.m. on December 17, 2010.

On January 25, 2011, Hilario was arraigned, he entered a plea of not guilty, and trial was set for April 25, 2011. Due to various continuances of trial sought by Hilario and further delays caused by discovery issues, the pre-trial motions deadline was extended to February 29, 2012 and trial was continued to May 12, 2012.

At the April 12, 2012 hearing on the State's motions to determine the voluntariness of Hilario's statements to police and to admit evidence of the Safeway robbery, the Circuit Court notified the parties that it would be off-island from June 13 to June 26, 2012. Given that estimates for the trial ranged "anywhere from four weeks up to six weeks," the court broached the subject of how the parties wished to proceed in the event trial was not completed by the time the court would be out of town. The State was opposed to such a substantial break in the trial and requested that the trial date be advanced to either May 7, or April 30, 2012 to avoid that break.

The defense objected to the advancement of trial, pointing out that it had relied on the May 14 trial date, some of the discovery transcripts were not yet complete, and "physical evidence was just sent up to [the Oregon] lab this week" for

which he could not provide a completion date. When the Circuit Court asked, "But if you're not going to be ready one or two weeks before trial, how do I know you're going to be ready for the actual trial date?" defense counsel answered, "That's what I'm saying." In light of the foregoing, upon consultation with Hilario, defense counsel asked for a continuance of trial until July 2, 2012. However, defense counsel then put on the record that he would not be available from August 9 through 20, 2012, presenting the same problem--a break in the middle of trial--that the parties faced with the current, May 14, 2012 trial date. The Circuit Court observed that "both scenarios have breaks" and indicated an inclination towards the advancement of trial to April 30, 2012. Ultimately, although Hilario "fe[lt] helpless and pressured into doing it," he acknowledged that the trial would have to be continued to September in order to have an uninterrupted six-week period for trial. Trial was set for September 17, 2012.

On August 20, 2012, State's Motion for a Court Order Preventing [Hansen-Loo] from Testifying at Trial, or, in the Alternative Disqualifying Keith Shigetomi, (Motion to Prevent) was filed. The State alleged that Hansen-Loo told police in 2010 that he was not at the scene of the murder and was not involved but had since admitted this was a lie; that on January 12, 2012, Hansen-Loo told defense investigator Brian Fujiuchi (Fujiuchi) and defense counsel Keith Shigetomi (Shigetomi) that Hilario drove Hansen-Loo to the murder scene and that Hansen-Loo "was physically present as a percipient witness during Moore's murder";[4] and that this January 12, 2012 statement "is simply a failed attempt at an alibi by Hilario" without giving proper notice of alibi or providing discovery thereof pursuant to HRPP

---

[4]  According to a report written by Fujiuchi regarding this January 12, 2012 meeting, Hansen-Loo stated that Hilario drove Hansen-Loo and Manaku to the scene, they witnessed a "Caucasian male" being dropped off nearby, and while the male stood under a tree near the road, Manaku approached the male and shot him "a couple of times" and after the male crouched down, Manaku shot him again.

Rule 12.1.[5] As a sanction for this violation, the State maintained that Hansen-Loo should be precluded from testifying at trial. Among other things, the State also argued that Shigetomi should be disqualified as Hilario's counsel as *inter alia*, he would be a witness regarding this statement by Hansen-Loo.

On August 22, 2012, Hilario filed a Notice of Alibi.

The Circuit Court heard the State's Motion to Prevent on August 24, 2012. Shigetomi explained to the Circuit Court that he had filed the Notice of Alibi on Hilario's behalf in response to the State's Motion to Prevent because the State

---

[5] HRPP Rule 12.1, Notice of Alibi, provides,

**(a) Notice by defendant.** If a defendant intends to rely upon the defense of alibi, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the prosecutor in writing of such intention and file a copy of such notice with the court.

**(b) Disclosure of information and witnesses.** Upon receipt of notice that the defendant intends to rely upon an alibi defense, the prosecutor shall inform the defendant in writing of the specific time, date, and place at which the offense is alleged to have been committed. The defendant shall then inform the prosecutor in writing of the specific place at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi. The prosecutor shall then inform the defendant in writing of the names and addresses of the witnesses upon whom the government intends to rely to establish defendant's presence at the scene of the alleged offense.

**(c) Time of giving information.** The court may fix the time within which the exchange of information referred to in section (b) shall be accomplished.

**(d) Continuing duty to disclose.** If prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the information furnished under section (b) of this rule, the party shall promptly notify the other party or the party's attorney of the existence and identity of such additional witness.

**(e) Failure to comply.** Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from, or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in the defendant's own behalf.

**(f) Exceptions.** For good cause shown, the court may grant an exception to any of the requirements of this rule.

argued that Hansen-Loo should be prevented from testifying, in part, because Hansen-Loo was an alibi witness and no notice of alibi had been filed by Hilario. Shigetomi stated that, although he disagreed with the characterization of Hansen-Loo as an alibi witness, he filed the Notice of Alibi "in an abundance of caution." Alternatively, Shigetomi argued that the purpose of the notice of alibi requirement is to provide notice of alibi witnesses and the State knew Hansen-Loo was a witness as early as March 2012, making a notice of alibi unnecessary. Furthermore, Hansen-Loo could not testify where Hilario was at the time of the shooting, only that Hilario was not the shooter.

The State argued that HRPP Rule 12.1 requires more than disclosure of witnesses, but also disclosure of the specific place the defendant claims to have been at the time of the offense and the names and addresses of the witnesses the defendant intends to rely on to establish his alibi, all within twenty-one days of arraignment.

The Circuit Court denied State's Motion to Prevent stating its reasoning, in pertinent part,

> THE COURT: But wouldn't that be absence, which is absence of a person, which is an alibi? Because when you look at 12.1(e) about the testimony, it talks about not only the absence, but also the presence at the scene. So, absence from the scene, presence at the scene, those all pertain to the alibi defense. Now, one of the issues the Court has is when you look at 12.1(a), the language is mandatory as far as what needs to occur.
>
> And what needs to occur is that if this is going to be pursued, then the Defendant has to notify the Prosecutor in writing. And something has to be filed with the Court. So there's a double requirement, and it's mandatory. It's not discretionary.

The Circuit Court went on to find that the Notice of Alibi was not timely, that amongst the possible remedies for this violation was exclusion of the witness's testimony, versus allowing the presentation of this defense and requiring the Rule's exchange of information, despite the resultant delay in the trial. The Circuit Court also found that this delay would be charged to Hilario for Rule 48 purposes.

The Circuit Court then set a schedule for the HRPP Rule 12.1 discovery exchange and re-set trial for January 7, 2013

for jury selection. The Circuit Court thereafter denied State's Motion to Prevent.

On September 18, 2012, Hilario moved the Circuit Court to reconsider its ruling on the alibi defense, asserting, among other things, that Hansen-Loo "has stated that he was present at the scene of the shooting of decedent, that he did not see [Hilario] at the scene of the shooting and that [Manaku] shot the decedent." At the October 2, 2012 hearing, Hilario renewed his position that Hansen-Loo was not an alibi witness, but only filed his Notice of Alibi in response to the State's Motion to Prevent to preserve his ability to call Hansen-Loo as a witness and because Hansen-Loo was not truly an alibi witness, Hilario should not have to comply with HRPP Rule 12.1. The Circuit Court denied Hilario's motion for reconsideration.

Hilario moved to dismiss for violation of Rule 48 and his constitutional right to a speedy trial on December 20, 2012 (Motion to Dismiss) which was heard on December 27, 2012. With regard to the two periods contested by Hilario on appeal, the Circuit Court reasoned,

> When we did the April 12th, 2012 hearing, we already had the waiver to May 14th. At that time, the Court did inform the parties about the options that we discussed, either advancing the trial date, continuing the trial date or doing the trial date in sections to accommodate a scheduled vacation that I had. And I'll state my daughter was graduating from college, so I was going to attend that event.
>
> And so, what happened was with the discussion of the parties, we did do the hearings, but we in the scheduling matter, the decision was to not advance it partly because of testing that had been requested, but not yet received back from Oregon. And the request was test -- forensic testing done at the request of Mr. Shigetomi on behalf of Mr. Hilario, so the Court was trying to accommodate the testing. Whether Mr. Shigetomi uses that at trial or doesn't use that at trial is not relevant for the Rule 48 issue.
>
> What is relevant is the Court was trying to accommodate the forensic testing that was going on in regards to what Mr. Shigetomi was trying to obtain in trying to assist Mr. Hilario to present the best defense available to Mr. Hilario. So, there was an effort to try and accommodate what the Defendant was doing as far as preparing potential defenses for trial. On the -- at that time that it was continued, Mr. Shigetomi on behalf of Mr. Hilario indicated that the option of breaking the trial in sections was not the option that the Defendant wanted. And so, the option was to move it back to September. And part of the reason for moving back to September was because the Defendant couldn't be ready for trial because of the forensic testing results that had not yet been available.

7

And so, part of the reason, if not the reason we continued from May 14th and set it for -- into the September date was to accommodate the Defendant and so -- and some of the testing that was being done. So, there was good cause to continue it on behalf of the Defendant. And the Court believes that there was also agreement and consent from both parties to set it for trial in September. And so because of that, the Court doesn't view that as time charged to the State.

Now, what happens is when we get to the August 24 date, this is where we get into the discussion regarding the alibi defense and the requirements of the alibi defense and Rule 12.1. The option for the Court at that time was to not allow it, because, first of all, the Court made a ruling over the objection of the Defendant that the testimony presented was, in essence, an alibi type defense.

And so, that -- the objection was already noted. Once the Court made that ruling, the options for the Court was to not allow it or to do Weinberg versus Dixon-Weinberg type analysis where you look for other options. And the other option was to move the trial to give the Defendant an opportunity to comply with 12.1, which was a less drastic measure. And so, that is what the Court did to give Mr. Hilario the opportunity to present an alibi defense and to comply with the requirements of 12.1, which are rather specific. And whether Mr. Hilario chooses to use that or chooses not to use that, those are within his discretion at time of trial.

And so, the Court finds from the August 24 date to the trial date that is set is also not a violation or it doesn't come towards Rule 48 for speedy and public trial. So, in essence, what the Court is finding, aside from the initial period, all of the time frames are charged either to the Defendant with the consent of the Defendant and with the agreement of the Defendant or actually caused by the Defendant.

Consequently, the Circuit Court denied Hilario's Motion to Dismiss.

On May 2, 2013, the Circuit Court held a hearing for three motions filed by Hilario and State: (1) a Motion for a New Trial, (2) a Motion for Judgment of Acquittal, both filed by Hilario, and (3) State's Motion to Strike and/or Memorandum in Opposition to Hilario's Motion for Judgment of Acquittal. The Circuit Court denied State's motion to strike, and heard arguments on Hilario's motions for a new trial and judgment of acquittal. Hilario articulated that he filed his motion for a new trial based on the voir dire questioning of jurors at the bench, explaining that "just about all of the questioning before jurors were called into the box was conducted at the bench." Hilario's counsel argued that because Hilario was not permitted to be present at the bench during individual juror voir dire, the

Circuit Court's denial impacted Hilario's right to challenge jurors for cause and effectively make use of his peremptory challenges. Hilario also supported his motion for a new trial by arguing that the Circuit Court erred in not excusing for cause juror Williams, and for denying his request for additional peremptory challenges.

The Circuit Court ruled that it was not aware of any requirement that a defendant participate in bench conferences, and based on juror Williams's credible answers in voir dire that she could be fair and impartial, denied both of Hilario's motions. This appeal followed.

## III.

Hilario argues that the Circuit Court erroneously denied his Motion to Dismiss because the intervals between May 14, 2012 to September 19, 2012 and September 19, 2012 to December 20, 2012 should not be excluded from Rule 48 computation.[6] On appeal, Hilario argues that "[i]f either period counted towards Rule 48, HRPP, the trial court erroneously denied Hilario's motion to dismiss."

The appellate court reviews a trial court's denial of a Rule 48 motion to dismiss under both the "clearly erroneous" and "right/wrong" standards of review:

> A trial court's findings of fact (FOFs) in deciding an HRPP 48(b) motion to dismiss are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed. However, whether those facts fall within HRPP 48(b)'s exclusionary provisions is a question of law, the determination of which is freely reviewable pursuant to the "right/wrong" test.

State v. Samonte, 83 Hawai'i 507, 514, 928 P.2d 1, 8 (1996) (quoting State v. Hutch, 75 Haw. 307, 328-29, 861 P.2d 11, 22 (1993)).

Rule 48(b)(1) requires the following:

> **(b) By court.** Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without

---

6    As Hilario does not argue on appeal that his constitutional right to a speedy trial was violated, we deem that claim waived. HRAP Rule 28(b)(7).

prejudice in its discretion, if trial is not commenced
within 6 months:

> (1) from the date of arrest if bail is set or from the
> filing of the charge, whichever is sooner, on any offense
> based on the same conduct or arising from the same criminal
> episode for which the arrest or charge was made[.]

The Circuit Court found, and Hilario does not
challenge, that the period between Hilario's arrest and the first
trial date should be included for Rule 48 purposes.[7] Hilario
also does not challenge the Circuit Court's ruling that the time
between the first setting of trial through the May 14, 2012 trial
date was excluded. Rather, Hilario argues that continuance of
the May 14, 2012 trial date to the September 17, 2012 trial date
(Period One) and/or the period between the September 17, 2012
trial date and the date he filed his Motion to Dismiss on
December 20, 2012 (Period Two) should not have been excluded and
including either period would result in a delay exceeding the
180-day time limit in Rule 48.[8]

*Period One.* Hilario argues that Period One should have
been included in the Circuit Court's Rule 48 calculations,
because his waiver by virtue of his seeking a continuance of
trial was not voluntary where he had to choose between "advancing
the trial for which he would not have been prepared or continuing
the trial."

Rule 48(c)(3) provides that "periods that delay the
commencement of trial and are caused by a continuance granted at
the request or with the consent of the defendant or defendant's
counsel" are excluded in computing the time for trial
commencement. The language requiring "the request or with the
consent" of the defendant means that the defendant or defendant's

---

[7] Although the Circuit Court ruled that this first period ended on April 28, 2011, the record reveals that the first trial date was April 25, 2011. The period between December 17, 2010 and April 25, 2011 amounts to 129 days.

[8] Hilario actually argues three sets of dates for these two periods. In his point on appeal, he specifies the periods were from May 14, 2012 to September 19, 2012 and from September 19, 2012 to December 20, 2012. In his argument, he claimed the operative dates were May 14, 2012 to August 27, 2012 and August 27, 2012 to December 20, 2012. In his reply brief, he argues May 14, 2012 through September 17, 2012 and September 17, 2012 through December 20, 2012. As May 14, 2012 and September 17, 2012 were the trial dates that Hilario argues were erroneously continued by the Circuit Court, we use these dates in our analysis.

counsel must agree to the continuance.  See State v. Diaz, 100 Hawai'i 210, 223, 58 P.3d 1257, 1270 (2002) (noting that Rule 48(c)(3) "only requires consent from either the defendant or the defendant's counsel" and rejecting defendant's argument that waiving the HRPP 48 and speedy trial rights was akin to waiving *Tachibana* rights.) and State v. Adams, 10 Haw. App. 593, 597 n.2, 880 P.2d 226, 230 n.2 (1994) ("Rule 48(c)(3) provides that periods of delay resulting from continuances 'granted at the request *or* with the consent of the defendant or his counsel[,]' shall be excluded[.]").  Thus, Rule 48 does not appear to require a request or consent of a defendant, so long as his or her attorney moves for a continuance.

Hilario's argument that he was placed between a rock and a hard place when asked to choose between a fully prepared defense or his right to a speedy trial is unavailing.  As we have said, Rule 48 excludes continuances requested by defense counsel and thus, strictly speaking, does not require the consent of a defendant.  In this case, the Circuit Court conducted an extensive discussion with defense counsel and Hilario himself regarding the reasons and options available, given the discovery, preparation, and scheduling needs of all concerned.  Thus, Hilario was fully informed, and when the Circuit Court noted that Hilario could not subsequently "complain about the delay for purposes of Rule 48 or [his] right to a speedy and public trial," Hilario responded, "I understand."

Furthermore, the need for more time to prepare for trial often presents such a dilemma:  the choice between being prepared for trial or asserting some other right versus postponing trial.  See Samonte, 83 Hawai'i at 515, 928 P.2d at 9 (court granted counsel's motion to withdraw in which defendant joined after being warned that his trial would be delayed as a result) and State v. Durry, 4 Haw. App. 222, 231, 665 P.2d 165, 173 (1983), overruled on other grounds by State v. Hoey, 77 Hawai'i 17, 881 P.2d 504 (1994) ("having been given the option of change in lawyers or agreeing to the continuance, Durry cannot now complain because of the choice she made.").

Moreover, although Hilario frames the issue as having to accept an advancement of the trial for which he would not be prepared or a continuance of the trial which would adversely affect his right to a speedy trial, there were other factors involved. Most important of these was that it was not clear Hilario would be prepared for the May 14, 2012 trial date. As of the April 12, 2012 hearing, Hilario had not received certain trial materials--transcriptions of witnesses' interviews and defense expert analysis--and it was not clear when these transcripts would be available as they had been pending, for one reason or another, for many months. Defense counsel's preference was to wait for transcriptions rather than to use the digital recordings he already possessed. There was also the matter of the defense's choice to independently test certain evidence that, at the time of the April 12, 2012 scheduling discussion, had just been sent to the laboratory in Oregon.[9] Thus, it was, as his attorney acknowledged, uncertain whether he would be prepared to proceed to trial by the May 14, 2012 trial date.

It was not error for the Circuit Court to exclude Period One from Rule 48 calculations.

*Period Two.* The issue of whether Hansen-Loo was an alibi witness arose in an unusual fashion. On August 10, 2012, the State moved to prevent Hansen-Loo from testifying at trial or alternatively, to disqualify defense counsel from representing Hilario. The State argued that, as Hansen-Loo was an alibi witness and Hilario had not filed a notice of alibi, Hansen-Loo should be prevented from testifying. Alternatively, as defense counsel's actions with regard to Hansen-Loo had made him a witness in the case, he should be disqualified.

Hilario filed his Notice of Alibi on August 22, 2012.

At the August 24, 2012 hearing on the State's motion, the Circuit Court first took up Hilario's Notice of Alibi, asking defense counsel if that was a defense Hilario was pursuing. Shigetomi responded,

---

[9] This Oregon laboratory, later referred to as "Intermountain" or "Oregon Lab" apparently completed testing by August 21, 2012, but did not prepare a report.

> MR. SHIGETOMI: Your Honor, I received the State's motion for court order preventing Jens Kyler Hansen-Loo from testifying at trial, or in the alternative, to disqualify me on Tuesday the 22nd, or the 21st. And upon my review, although I disagree with it, I don't believe that -- one of the basis [sic] that they're saying to prevent Hansen-Loo from testifying is that he is an alibi witness and that proper notice was not given as to I guess his status as an alibi witness. And I disagree with that.
>
> But in the abundance of caution, I filed that notice of alibi. The purpose of the notice of alibi is to give notice of a witness, and they are fully aware of Hansen-Loo's status as a witness from March of this year. So, it's not as if we were hiding that witness or anything like that. They knew about that witness, and the purpose of the rule is that they have notice of the witness.
>
> So, we gave them that a long time ago. Now, I still -- my position is still that he's not an alibi witness. However, I'm not about to tell the Court that I want him prevented from testifying, because obviously he is a critical witness. But our position as to the notice of alibi is that it's not necessary. Now, I know from our discussions in chambers, the Court disagrees. And the Court finds that Hansen-Loo is an alibi witness, that the Court is going to require that the steps set forth in Rule 12.1 be followed. And so our position is that although he's not -- we don't consider him an alibi witness, obviously we're not going to forego calling him as a witness.
>
> . . . .
>
> . . . And I just want to put on the record our position is that we don't believe he's an alibi witness.
>
> Because this witness will not say or is unable to say where Vicente Hilario was on the day in question. What that witness does say, however, is that he was present at the time of the shooting, that he witnessed the shooting, and that it was not Vicente Hilario who did the shooting.

Defense counsel also informed the Circuit Court that he spoke with Hansen-Loo for the first time in January 2012 and provided the State with notice and Hansen-Loo's statement in March 2012. The Circuit Court then ruled,

> THE COURT: But wouldn't that be absence, which is absence of a person, which is an alibi? Because when you look at 12.1(e) about the testimony, it talks about not only the absence, but also the presence at the scene. So, absence from the scene, presence at the scene, those all pertain to the alibi defense. Now, one of the issues the Court has is when you look at 12.1(a), the language is mandatory as far as what needs to occur.

The September 17, 2012 trial date was postponed as, contrary to HRPP Rule 12.1, the parties had not yet exchanged the information required by that rule, and there was insufficient

time to do so before the September trial date.[10] As Hilario brought his Motion to Dismiss prior to the January 7, 2013 continued trial date, Period Two consists of the time between the prior trial and his motion, an interval of ninety-four days.

In Hawai'i, an alibi defense is "an attempt by the defendant to demonstrate he did not commit the crime because, at the time, he was in another place so far away, or in a situation preventing his doing the thing charged against him." State v. Cordeira, 68 Haw. 207, 210, 707 P.2d 373, 376 (1985) (citation and internal quotation marks omitted). "Strictly speaking, alibi evidence is merely rebuttal evidence directed to that part of the state's evidence which tends to identify the defendant as the person who committed the alleged crime." Id., (italics omitted). See also Black's Law Dictionary, 87 (10th ed. 2014) ("1. A defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time. . . . 2. The quality, state, or condition of having been elsewhere when an offense was committed."). As Hansen-Loo would not testify where Hilario was at the time of the shooting, but only that he was not at the scene of the shooting, Hansen-Loo was not an alibi witness.

---

[10]   Hilario filed a Motion for Reconsideration of Determination of Alibi Defense on September 14, 2012 (Motion for Reconsideration). In his attached declaration defense counsel stated, in pertinent part,

> [Hansen-Loo] has stated that he was present at the scene of the shooting of decedent, that he did not see [Hilario] at the scene of the shooting and that [Manaku] shot the decedent; . . . Hansen-Loo is unable to say where [Hilario] was at the time of the shooting. . . .   [Hilario] has no witness to say where [Hilario] was at the time of the alleged incident other than [Hilario]; [and] [t]he notice requirements of Rule 12.1, HRPP, as applied in this case, require[] [Hilario] to make a pre-trial statement in his own defense violating his federal and state constitutional right against self incrimination[.]

The Circuit Court denied Hilario's Motion for Reconsideration on October 2, 2012.

In his October 9, 2012 HRPP Rule 12.1 disclosure, Hilario stated that he "is unable to specify the specific place he was at the time of the alleged offense but he was in the vicinity of his residence and/or the Anahola soccer field."

14

The State acknowledges as much in its Answering Brief:

> If Kyler was the only defense witness to establish that Appellant was not at the shooting--via Kyler's testimony that he was present and Appellant was not--then the State does not believe this is technically alibi testimony because under rule 12.1, there would be nothing to disclose:  a witness who is present at the crime and saw that the defendant was not there, cannot establish the location of the defendant at the time the crime was committed.  [See] Rule 12.1(b), HRPP.

Thus, it was the State that first characterized Hansen-Loo as an alibi witness, a characterization that the defense never adopted and actively contested.  Absent this characterization, there would be no reason for the defense to file a notice of alibi.  The State was aware Hansen-Loo was a percipient witness and moved for leave to depose Hansen-Loo on May 3, 2012, four months before the September 17, 2012 trial date.

As Hansen-Loo was not an alibi witness, the procedure set out in HRPP Rule 12.1 did not apply and Hilario's trial should not have been delayed on this basis.[11]

As alternative grounds in support of the Circuit Court's ruling on Period Two, the State argues that Hilario was not ready to proceed to trial on September 17, 2012 as he had not yet received testing results from the Oregon Lab.  However, as previously stated, it appears that the defense was aware of the Oregon Lab's results, albeit without a written report, as early as August 21, 2012.[12]

---

[11]     We note that under Rule 48(d)(2), a notice of alibi "shall be deemed not to be excluded in computing the time for trial commencement."  As we conclude Hansen-Loo was not an alibi witness, we need not decide whether a late disclosure of alibi defense would trigger an excludable period of time.

Nor does the fact that Hilario, on the first day of jury selection, included Valena Kamaka as a witness who eventually testified that Hilario was with her, change our analysis.  First, there is no indication Hilario intended to call Kamaka as an alibi witness at the time this issue was litigated.  It was the State that first raised the question of whether Hansen-Loo was an alibi witness.  Second, it cannot be said that, once the Circuit Court ruled Hansen-Loo was an alibi witness, the defense did not change its theory and decided to present evidence of an alibi.  Finally, Kamaka's testimony did not specify time frames and arguably did not establish that Hilario could not have been at the scene of the crime when the shooting occurred.

[12]     The State relies upon an exchange between counsel and the Circuit Court at the October 2, 2012 hearing on Hilario's Motion for Reconsideration, and motions to compel from both parties.  During that hearing,. the State made

(continued...)

The State also argues that continuance of the September 17, 2012 trial date was consented-to as Hilario lodged no objection to the continued January 7, 2013 trial date or the Circuit Court's ruling that this continuance would be "charged to the defense". This argument is inconsistent with the fact that the continuance to January 7, 2013 was a direct consequence of the Circuit Court's ruling that Hilario's "late" notice of alibi required exchange of information that would not be completed before September 17, 2012. Hilario clearly opposed and objected to the ruling that the alibi rule applied. Once the Circuit Court ruled against Hilario, objection to the rescheduling would have amounted to nothing more than restating his objection to the continuance of trial.

In a similar vein, the State argues that defense counsel suggested the January 7, 2013 date. However, it was the Circuit Court that first put it to counsel that, given the anticipated length of trial, they were looking at "early January," to which defense counsel responded, "Your Honor, the earlier, the better." The Circuit Court then selected the January 7, 2013 date.

Finally in this regard, the State argues that, because Hilario did not disclose his witnesses who would establish his absence from the crime scene by the September 17, 2012 trial date, the continuance of that trial date should nevertheless be excluded from Rule 48 calculation. However, it appears that the Circuit Court understood Hilario would not be providing alibi information while his Motion For Reconsideration was pending. Thus, Hilario's failure to comply with the HRPP Rule 12.1 deadlines set by the Circuit Court or by the September 17, 2012 trial date did not actually cause a delay of trial and therefore was not a basis to exclude time for Rule 48 purposes.

---

[12](...continued)
its request for the Oregon Lab report from defense counsel, stating that the Oregon Lab told the State it needed "approval" before providing a report to the State. This exchange does not provide a date on which the lab results were provided to the defense. If anything, the exchange implies that the results were available "a couple of months ago" when the State's attorney contacted the Oregon Lab.

The State's remaining arguments, regarding events after the September 17, 2012 trial date was continued, are unavailing as they depend on the notion that we can say how events would have unfolded had the September 17, 2012 trial date not been continued. For example, on August 24, 2012, when the Circuit Court ruled alibi information must be exchanged, there were several motions on the docket to be decided. As a result of the Circuit Court's ruling, the Circuit Court postponed hearing those other motions until "a later date" which turned out to be after September 17, 2012. Trying to determine whether those motions would have delayed the September 17, 2012 trial date--and if so, for how long--would be nothing more than speculation.

Our conclusion that Hansen-Loo was not an alibi witness, and therefore Period Two was not properly excluded for Rule 48 purposes, leads to the further conclusion that, at the time Hilario filed his motion to dismiss, the non-excludable time exceeded Rule 48's 180-day limit. Both parties agree that the time between Hilario's arrest and the first trial setting should be included in this calculation. The record reveals that Hilario was arrested and held on December 10, 2010, and that the trial was first set for April 25, 2011, an interval of 129 days. We have also concluded that Period One was properly excluded. However, when Period Two, an interval of ninety-four days, is added, the total delay for Rule 48 purposes is 223 days, clearly exceeding the 180 time limit. The plain language of Rule 48 requires the dismissal of the case where this 180-day limit has been exceeded. HRPP Rule 48(b) ("the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months[.]"); see also State v. Diaz, 100 Hawai'i 210, 222, 58 P.3d 1257, 1268 (2002) ("HRPP Rule 48(b) mandates the dismissal of criminal charges if a trial on those charges does not commence within six months, construed as one hundred eighty days, from the time of the arrest[.]") (citation omitted).

## IV.

Based on the foregoing, we vacate July 25, 2013 Judgment and remand for dismissal of the charges with or without

prejudice in the discretion of the Circuit Court of the Fifth Circuit.

DATED:  Honolulu, Hawai'i, March 18, 2016.

On the briefs:

Keith S. Shigetomi,
for Defendant-Appellant.

Presiding Judge

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kauai,
for Plaintiff-Appellee.

Associate Judge